# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THOMAS PICOZZI,** | : | CIVIL ACTION |
| **Plaintiff,** | : | |
| | : | |
| v. | : | NO. 18-2439 |
| | : | |
| **MR. JEFF MURRY,** *et al.*, | : | |
| **Defendants.** | : | |

**KEARNEY, J.**                                                                                                       **June 13, 2018**

## MEMORANDUM

Thomas Picozzi has now filed twelve cases as a *pro se* litigant in approximately one (1) month. He always obtains leave to proceed without paying the fees required to be paid by every litigant. On June 8, 2018, we entered Orders in seven earlier-filed cases precluding Mr. Picozzi from filing these *pro se* claims without paying the fees.[1] Before reviewing our June 8, 2018 Order, Mr. Picozzi sued 13 people in this case alleging conduct relating to a carpenters' union and others communicating with him on a variety of different subjects.[2] He again moves for leave to proceed *in forma pauperis*.[3]

As Mr. Picozzi did not have notice of our June 8, 2018 Orders when he filed this case, we grant Mr. Picozzi leave to proceed *in forma pauperis* but must again dismiss his Complaint in the accompanying Order. We also remind Mr. Picozzi of his obligations under our June 8, 2018 Orders to show cause before filing another case seeking *in forma pauperis* status.

## I. Alleged facts

Mr. Picozzi alleges he "would like to bring to the attention of the Phila. courts in case 18-2032[[4]] . . . that there [might] be more defendants involve[d] in the case from another district in the carpenter union Local 277 of New York."[5] He suspects this involvement because "one

morning [he] was making a call and somehow [he] broke in to a phone call that Mr. Jeff Murry was hav[]ing with someone."[6] According to Mr. Picozzi, Mr. Murry was discussing "about a billion dollars taking out of the carpenter union to open up some kind of training center."[7]

Mr. Picozzi alleges the carpenters' union "made some kind of deal with a person that works for Phila. Convention Center" and that "there was money exchange[d] between both [parties]."[8] He received a call from Mr. Murry telling him if he had any questions, he should "talk to team leader Mike Haines."[9] Mr. Picozzi "ask[ed] Mr. Haines about a couple deal[s] his response was confidential."[10] Mr. Picozzi also asked Mr. Haines "about when some of carpenter official did something to [his] daughter['s] horse."[11] Mr. Haines told Mr. Picozzi it was not the union's business.[12] Mr. Picozzi told Mr. Murry that Mr. Haines had tried to hurt him "years ago."[13]

Mr. Picozzi alleges he talked to Mr. Murry about a police officer who was killed on Route 1.[14] According to Mr. Picozzi, the carpenters' union may have been involved.[15] He also alleges non-party Debbie McKuckin used to "bad mouth the officer['s] wife all the time [and that] Harry McKuckin knew something about the death of the police officer."[16] He also suggests we "should ask Mr. Jeff Murry if he knew about the fake death of Harry McKuckin['s] son."[17] Mr. Picozzi further alleges a little girl "that Harry McKuckin and the top official [were] passing around [might have] been Mr. Picozzi['s] daughter."[18]

Mr. Picozzi mentions a "pool table that Harry McKuckin['s] son always[s] talk[ed] about."[19] According to Mr. Picozzi, Harry McKuckin and his son asked him to drive up to New York and pick up an antique pool table.[20] Mr. Picozzi brought the pool table to the son's house to have it redone.[21] He mentions he was then married to Debbie McKuckin's sister.[22] He pleads that "Harry McKuckin love[s him] like a son that['s] why he tr[ied] to kill him."[23]

2

Mr. Picozzi also asks if Mr. Murry knows what happened to him in the hospital.[24] He also mentions he received mail from John Ballantyne, a friend of Mr. Murry's, stating he was "not allow[ed] to talk to people in the carpenter[s'] union."[25] Mr. Picozzi pleads that the courts "should have a talk with Jeff Murry [and] John Ballantyne about the money that was [taken] off the carpenter union and the State of Pennsylvania."[26]

Mr. Picozzi attaches copies of documents from the Northeast Regional Council of Carpenters as well as a letter sent to him by attorney Marc L. Gelman of the law firm Jennings Sigmond, requesting Mr. Picozzi "immediately cease and desist" from harassing the Northeast Regional Council of Carpenters with numerous "senseless and outlandish" voicemails."[27]

He does not plead the relief he seeks arising from any of these facts.[28]

## II. Analysis

### A. We grant Mr. Picozzi leave to proceed *in forma pauperis*.

We will grant Mr. Picozzi leave to proceed *in forma pauperis* because it appears he is not capable of paying the fees necessary to commence this action. We will dismiss the Complaint if it fails to state a claim.[29] Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6),[30] which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[31] Conclusory statements and naked assertions will not suffice.[32] "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."[33] As Picozzi proceeds *pro se*, we construe his allegations liberally.[34]

### B. We dismiss the Complaint for lack of subject-matter jurisdiction.

We lack subject-matter jurisdiction over Mr. Picozzi's latest Complaint. If Mr. Picozzi is again trying to bring claims based on a failure to investigate his allegations or prosecute individuals involved in the alleged deal regarding the Convention Center, his claims fail.[35] ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.");[36] ("Boseski has no cognizable claim against a government entity for its failure to investigate or bring criminal charges against another individual."). To the extent Mr. Picozzi is asserting civil rights claims under 42 U.S.C. § 1983, he does not suggest the Defendants are state actors or they deprived Picozzi "of rights, privileges, or immunities secured by the Constitution or laws of the United States."[37] Mr. Picozzi fails to allege a basis for federal question jurisdiction.

To the extent Mr. Picozzi is raising tort claims under Pennsylvania law, there is no basis for jurisdiction over those claims. The only independent basis for our jurisdiction over these state law claims is under 28 U.S.C. § 1332(a), which grants us jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Diversity jurisdiction requires "complete diversity," which in turn requires that "no plaintiff be a citizen of the same state as any defendant."[38] Mr. Picozzi pleads the parties are not completely diverse. We must dismiss claims based on state law for lack of subject-matter jurisdiction.

### C. Conclusion

We grant Mr. Picozzi leave to proceed *in forma pauperis* but dismiss his Complaint for lack of subject-matter jurisdiction. This dismissal will be without prejudice to Mr. Picozzi's right to raise state law claims against the Defendants in state court.[39] In light of the Court's lack

4

of subject-matter jurisdiction over the Complaint, as well as Mr. Picozzi's earlier filings in this Court, Mr. Picozzi will not be permitted to file an amended complaint in this matter.

---

[1] *See e.g., Picozzi v. Goldberg,* No. 18-2201, ECF Doc. No. 6 (E.D.Pa. June 8, 2018).

[2] Mr. Picozzi is suing Jeff Murry, John Bellatyne, Douglas J. McCarron, David Haines, William Banfield, Robert Weakley, Lisa Husband from Briagadome Farm, Jim Iquito, Coleen Iquito, Robert Naughton, Marc L. Gelman, Jennings Sigmond, and Thomas McGoldrick.

[3] ECF Doc. No. 1.

[4] The Clerk assigned Civil Action No. 18-2032 to the Honorable Cynthia M. Rufe. On May 17, 2018, Judge Rufe dismissed Mr. Picozzi's complaint without leave to amend. *See Picozzi v. Guy Peiagelee & Sons*, No. 18-2032, 2018 WL 2293939 (E.D. Pa. May 17, 2018).

[5] ECF Doc. No. 2 at 6.

[6] *Id.*

[7] *Id.*

[8] *Id.* at 9.

[9] *Id.*

[10] *Id.*

[11] *Id.* at 10.

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.* at 12.

[19] *Id.*

[20] *Id.*

[21] *Id.* at 13.

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.* at 14.

[26] *Id.*

[27] *Id.* at 16-28.

[28] *Id.* at 7.

[29] 28 U.S.C. § 1915(e)(2)(B)(ii).

[30] See *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

[31] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 2009 (quotations omitted).

[32] *Id.*

[33] Fed. R. Civ. P. 12(h)(3).

[34] *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

[35] *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).

[36] *Boseski v. N. Arlington Municipality*, 621 F. App'x 131, 135 (3d Cir. 2015) (per curiam).

[37] *Parratt v. Taylor*, 451 U.S. 527, 535 1981); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

[38] *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010).

[39] We take no position as to the merits or timeliness of Mr. Picozzi's state law claims.